

FILED
NOV 14 2007

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| SUNBEAM NECKLACE, as Special Administrator of the Estate of Walter T. Thornton, Jr, | * * * * | Civ. 06-4274 |
| and | * * | MEMORANDUM OPINION AND ORDER RE: MOTIONS FOR SUMMARY JUDGMENT |
| MARY AIKEN, as Special Administrator of the Estate of Justin Theodore Necklace, | * * * | |
| Plaintiffs, vs. | * * * | |
| UNITED STATES OF AMERICA, acting through the Bureau of Indian Affairs, | * * * | |
| Defendant. | * | |

In December of 2006, Plaintiff Sunbeam Necklace, as Special Administrator of the Estate of Walter T. Thornton, Jr., and Plaintiff Mary Aiken, as Special Administrator of the Estate of Justin Theodore Necklace, brought separate actions against the United States under the Federal Tort Claims Act. This Court later granted the United States' motion to consolidate the cases. Now pending before the Court are Plaintiffs' and the United States' motions for summary judgment.

## STATEMENT OF FACTS

On January 23, 2006, Justin Theodore Necklace was driving and Walter Theodore Thornton, Jr. was riding as a passenger in a vehicle traveling southbound on 395th Avenue near Wagner, South Dakota. Isaac Primeaux, Jr. was northbound on 395 Avenue, driving a pickup and towing a flatbed trailer loaded with a skid loader. The trailer disengaged from the pickup and crossed the center line directly into the path of the southbound vehicle, resulting in a collision which killed both Justin Necklace and Walter Thornton.

Isaac Primeaux, Jr. had been hired by Gordon Shields, the Administrative Officer for the Yankton Sioux Tribe (YST) on the morning of January 23, 2006. At the time of the accident,

Primeaux was on his way to clear ice from the North Housing pedestrian pathway which was adjacent and parallel to 395th Avenue. Both Plaintiffs allege that at the time of the accident, Primeaux was an "employee or borrowed servant" of the Yankton Sioux Tribe who was "operating under the auspices of a self-determination contract between the Yankton Sioux Tribe and the United States of America through the Bureau of Indian Affairs (BIA) providing for road maintenance and snow removal." Plaintiffs allege that Primeaux and the Yankton Sioux Tribe were negligent in (a) failing to properly attach the trailer to the tow vehicle; (b) failing to properly secure the skid loader to the trailer; (c) failing to provide proper and adequate equipment; and (d) failing to properly inspect, maintain, and repair such equipment.

The United States denies that Primeaux was an employee of the Yankton Sioux Tribe, and contends that since Primeaux is lacking this employment status, he is not a "covered employee" under the Federal Tort Claims Act. The United States contends that Primeaux was a contractor who entered into a third party contract with the Yankton Sioux Tribe.

At the time of the accident, there was a self-determination contract between the BIA and the YST pursuant to the Indian Self-Determination and Education Assistance Act, 25 U.S.C. §§ 450a et.seq. The original self-determination contract between the BIA and the Yankton Sioux Tribe was entered into for fiscal year 1996, six years prior to the construction of the pathway that Primeaux was hired to clear. The original self-determination contract lists 16 miles of particular roads that were in existence in 1996 to be maintained under the contract. Robert Erdmann, a BIA road maintenance engineer testified that as of June 2007, the Yankton Sioux Tribe BIA road system included 26.9 total miles of road. In addition to the pedestrian pathway in issue, there are other roads contained on the official BIA inventory for the Yankton Sioux Tribe Reservation which are not listed in the 1996 self-determination contract, such as the Wagner Airport Road, Marty Main Street, and Lawrence Township Housing Streets.

Robert Erdmann's primary duty is to do program reviews and offer technical assistance to either the agencies or the tribes for the BIA reservation road systems. He conducts technical inspections of the officially designated BIA routes on fifteen Indian reservations and makes maintenance recommendations to the agencies or the Tribe. Erdmann inspected the pedestrian pathway in issue on November 20, 2002, December 4, 2003, and April 11, 2005, and made

2

recommendations regarding maintenance.

What appears to be the 1996 self-determination contract number CTA08T34624 establishes a term commencing October 1, 1995 and ending on September 30, 1996. This self-determination contract under Scope of Work, Part (A), defines the Scope of Contract to be performed by the Yankton Sioux Tribe for Road Maintenance as follows:

> A program function to maintain, repair and service roads that are a part of the Federal Aid Indian Road System.[1] The purpose of the Road Maintenance Program is to preserve, upkeep and restore roads, rights-of-ways and structures as nearly as possible or practicable to their original condition as constructed or improved to the end that the investment in such roads will be conserved and that a safe and usable road is provided for the traveling public during both summer and winter driving conditions.

The Scope of Work, Part (B), for the Roads Maintenance for this contract states: "The Contractor shall provide all labor, equipment and supplies to perform regular and occasional maintenance services, including protecting and handling traffic incidental to work on 16.0 miles of roads on the Yankton Sioux Reservation." The contract for the 1996 fiscal year lists the paved surfaced roads which made up these 16 miles of roads. The pedestrian pathway in issue, known as Route 11, was not constructed at the time and is not listed in this self-determination contract. Robert Erdmann has submitted an affidavit stating that the routes included in the 1996 self-determination contract for road maintenance included all of the BIA routes that existed in 1996, as well as the two additional roads

---

[1] 25 C.F.R. 170(f) (4-1-00 ed.) provides:
> Federal-Aid Indian Road System means those Indian reservation roads and bridges for which financial aid for construction is available only from specific appropriations of Federal funds therefor and which are designated by the Bureau of Indian Affairs and the Federal Highway Administration. This term does not include roads or bridges on Indian reservations for which financial aid for construction and improvement is available to a State under the Federal-Aid Highway Act.

3

which had been maintained by the BIA through an agreement with the county.

Lorraine Brockie, the Self-Determination Contracting Officer for the Bureau of Indian Affairs Office in Aberdeen, South Dakota, submitted an affidavit stating that the only Statement of Work pertaining to the Yankton Sioux Tribe's road maintenance contract was the original statement of work written for fiscal year 1996. The Court presumes Ms. Brockie is calling the Part (B) of The Scope of Work, the Statement of Work. Ms. Brockie further stated that the 1996 Statement of Work was incorporated into successive contracts without any changes. Ms. Brockie did not articulate how that incorporation was accomplished or documented and Ms. Brockie is silent with regard to whether Part (A) of the Scope of Work, or Scope of Contract in the 1996 contract was incorporated into successive contracts.

The contract material for the self-determination contract to administer the Consolidated Tribal Program which was in effect at the time of the January 2006 accident (CTA08T34645) does not refute the 1996 Scope of Contract provision. Section C1(a), Statement of Work, for the contract in effect at the time of the 2006 accident states:

> The Contractor shall obtain from the BIA all such funds and other resources made available for the benefit of the tribe for all programs to be operated and services to be delivered by the Contractor through this contract on behalf of the BIA, except for those "Trust" and "executive functions" of the BIA which are considered non-contractible.

Section 2 of this Statement of Work states: "The Contractor shall follow the SOW as incorporated into this contract as attachment 3." No attachment 3 was originally provided to define the statement of work for this contract. However, on November 13, 2007, the United States filed an "Attachment 3" which "is believed to be the attachment identifying the statement of work referenced" in the contract in effect at the time of the 2006 accident.

Attachment 3 bears the title "Road Maintenance and Snow Removal." Attachment 3 states: "The purpose of this contract is to perform road maintenance and snow removal for roads on the Bureau of Indian Affairs approved road system for the Yankton Indian Reservation." Attachment 3 defines the scope of the contract as follows: "the Yankton Sioux Tribe will perform road maintenance and snow removal with appropriate equipment already on inventory for such purposes."

The Statement of Work specifies work to be performed without listing any particular roads on the Bureau of Indian Affairs approved road system for the Yankton Indian Reservation.

Primeaux used a pickup, trailer and skid loader which were owned by the Tribe, not part of the Roads Maintenance equipment. Primeaux entered into a loan agreement for the use of this equipment. None of the equipment involved in the 2006 accident was owned by the self-determination Roads Maintenance Program. The flatbed trailer belonged to the YST Utilities, and the skid loader belonged to the YST Environmental Protection Agency. Neither the Tribal Utilities nor the Environmental Protection Agency operated pursuant to a self-determination contract between the YST and the BIA. Primeaux submitted a request for pay for four hours of work on January 23, 2006, and was paid $40 from the Roads Maintenance contract account in February of 2006.[2]

In a recorded statement Primeaux made three days after the accident to an insurance investigator, he stated that he was not a full time employee of the Tribe and was just hired that day to clean the pathway. Primeaux's tax documents from 2004 and 2005 show that the YST reported that Primeaux received "non-employee compensation" on a 1099 miscellaneous income form for the work he performed for the YST.

Principles of Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and

---

[2]Under the self-determination contract in effect at the time of the accident, the FTCA Coverage provision states that the Contractor and its employees are deemed to be employees of the Federal government while performing work under the contract and the status of the employee is "not changed by the source of the funds used by the Contractor to pay the employee's salary and benefits."

its entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

Once the moving party has met its burden, the non-moving party may not rest on the allegations of its pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 257; *City of Mt. Pleasant v. Associated Elec. Coop., Inc.*, 838 F.2d 268, 273-74 (8th Cir. 1988). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## WHETHER THE SELF-DETERMINATION CONTRACT INCLUDED MAINTENANCE AND SNOW REMOVAL OF THE ROUTE 11 PEDESTRIAN PATHWAY?

The Indian Self–Determination and Education Assistance Act (ISDEAA), 25 U.S.C.A. §§ 450a to n, directs either the Secretary of Health and Human Services and/or the Secretary of the Interior, on request, to enter into contracts with tribal organizations to plan, conduct, and administer designated federal services programs. One of the primary purposes of the ISDEAA is to assure maximum Native American participation in the direction of federal services to Indian communities in order to render such services more responsive to the needs and desires of these Indian communities, and to enhance educational services and opportunities for these Indian communities. *See generally*, Barbara J. Van Arsdale, J.D., Annotation, *Validity, Construction, and Application of Indian Self-Determination and Education Assistance Act*, 190 A.L.R. FED. 249 (2003).

Congress amended the ISDEAA in 1988, to allow recovery under the Federal Tort Claims Act for certain claims arising out of the performance of self-determination contracts. In so amending the ISDEAA Congress acknowledged that the tribal governments, when carrying out self-determination contracts, were performing a federal function and that a unique legal trust relationship existed between the tribal government and the federal government in the self-determination agreements. Congress concluded that because of this relationship, the federal government must provide liability insurance to the tribal government to apply to self-determination

contracts. *FGS Constructors, Inc. v. Carlow*, 64 F.3d 1230, 1234 (8th Cir. 1995).

The Government contends that the self-determination contract in effect at the time of the accident did not include maintenance or snow removal for the pedestrian pathway on which Primeaux intended to work and that this Court should grant summary judgment in its favor because Primeaux was not acting under the auspices of a self-determination contract when he was working to remove ice from the pathway. The Government further claims that the pathway could have only been added to the contract by a written modification because of the following provision in the 638 contract for the 1996 fiscal year:[3]

> [N]o modifications to this Contract shall take effect unless such modification is made in the form of a written request to the Contract, and the Contractor and Secretary provide written consent for the modification. The Agency Superintendent for Education shall forward request for modifications within (5) five days of receipt from the Contractor to the Aberdeen Area Office of Acquisition and Property Management.

Plaintiffs contend, however, that as a general contract principle, even where a contract requires a written modification, the parties can modify the contract by their subsequent conduct.

This Court need not and will not determine whether the parties can modify a self-determination contract because the Court concludes that the contract in effect at the time of the accident included maintenance or snow removal for the pedestrian pathway in issue. Other than the statement of Lorraine Brockie, the parties have not presented justification to the Court why the scope of the contract for the 1996 fiscal year is controlling with regard to the 2006 accident, but the Court concludes that even if the contract for the 1996 fiscal year is applicable, the Scope of Contract provision set forth in the 1996 contract was sufficiently broad to cover the work on the pedestrian pathway and that a liberal construction of either the 1996 or 2006 contract supports including maintenance or snow removal for the pedestrian pathway in issue as part of the self-determination

---

[3]The contract in effect in January of 2006 contains the following provision on Contract Revision or Amendment:
> This contract may be revised or amended as required to carry out the purpose of the program, project or function being contracted. The Contractor shall submit proposed revisions through the Awarding Official's Technical Representative to the Awarding Official. ... .

contract.

Congressional policy regarding contracts under the Indian Self-Determination and Education Assistance Act is set forth as follows in 25 C.F.R. § 900.3(a)(5):

> Congress has further declared that each provision of the Act and each provision of contracts entered into thereunder shall be liberally construed for the benefit of the tribes or tribal organizations to transfer the funding and the related functions, services, activities, and programs (or portions thereof), that are otherwise contractible under the Act, including all related administrative functions, from the Federal government to the contractor.

Policy considerations for the Secretary of Interior regarding contracts under the Indian Self-Determination and Education Assistance Act are set forth in 25 C.F.R. § 900.3(b). It is the policy of the Secretary of Interior to make best efforts to "remove any obstacles which might hinder Indian tribes and tribal organizations including obstacles that hinder tribal autonomy and flexibility in the administration" of self-determination contract programs. 25 C.F.R. § 900.3(b)(1). In addition the "Secretary shall afford Indian tribes and tribal organizations the flexibility, information, and discretion necessary to design contractible programs to meet the needs of their communities consistent with their diverse demographic, geographic, economic, cultural, health, social, religious and institutional needs." 25 C.F.R. § 900.3(b)(3).

Given the breadth of the original scope of work provision, the fact that the original contract included all of the BIA routes that existed in 1996, and the Congressional policy surrounding self-determination contracts, the Court concludes that the Route 11 pathway was contemplated within the self-determination contract for snow removal and road maintenance at the time of the 2006 accident. The Government's motion for summary judgment will be denied on this issue and the Plaintiffs' motion for summary judgment will be granted on this issue.

## WHETHER PRIMEAUX WAS AN EMPLOYEE OF THE YANKTON SIOUX TRIBE AT THE TIME OF THE JANUARY 23, 2006, ACCIDENT?

The Government contends that Primeaux was not an employee of the Government under the Federal Tort Claims Act, but was an contractor with the United States so as to specifically exclude coverage under the FTCA. Plaintiffs maintain that Primeaux was an employee. Both sides have

8

requested summary judgment on this issue.

The Federal Tort Claims Act constitutes a limited waiver of sovereign immunity making the federal government liable to the same extent as a private party for certain torts of federal employees acting in the scope of their employment. 28 U.S.C.A. § 2671 et seq. Therefore, since the United States can be sued only to the extent that it has waived its sovereign immunity, due regard must be given to the exceptions, including the independent contractor exception to such waiver. *United States. v. Orleans*, 425 U.S. 807 (1976).

28 U.S.C. § 2671 defines "employee of the government" as including:

> (1) officers or employees of any federal agency, members of the military or naval forces of the United States, members of the National Guard while engaged in training or duty under section 115, 316, 502, 503, 504, or 505 of title 32, and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation, and (2) any officer or employee of a Federal public defender organization, except when such officer or employee performs professional services in the course of providing representation under section 3006A of title 18.

In determining whether an individual is an employee or contractor for purposes of the FTCA, the court must evaluate the extent to which the government has the power to supervise the individual's day-to-day operations. The crucial question in this evaluation is the amount of control exercised by the government over the physical performance of the individual. *Knudsen v. United States*, 254 F.3d 747, 750 (8th Cir. 2001)(citing *United States. v. Orleans*, 425 U.S. 807 (1976); and *Logue v. United States.*, 412 U.S. 521, 527-528 (1973)); *Bernie v. United States*, 712 F.2d 1271 (8th Cir. 1983). The Supreme Court has observed that the modern common law as reflected in the Restatement of Agency makes the distinction between the servant or agent relationship and that of independent contractor turn on the absence of authority in the principal to control the physical conduct of the contractor in performance of the contract. *Logue*, 412 U.S. at 527.

The RESTATEMENT (SECOND) OF AGENCY§ 220 (1958) lists the following facts, which among others, should be considered in determining whether one is a servant or an independent contractor:

9

>  (a) the extent of control which, by the agreement, the master may exercise over the details of the work;
>  (b) whether or not the one employed is engaged in a distinct occupation or business;
>  (c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
>  (d) the skill required in the particular occupation;
>  (e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;
>  (f) the length of time for which the person is employed;
>  (g) the method of payment, whether by the time or by the job;
>  (h) whether or not the work is a part of the regular business of the employer;
>  (i) whether or not the parties believe they are creating the relation of master and servant; and
>  (j) whether the principal is or is not in business.

Although the Court believes that there are factors which would support finding Primeaux not to be an employee of the Road maintenance program, other factors, and most importantly, the authority to control Primeaux's physical performance, weigh in favor of finding Primeaux to be an employee. Although the equipment Primeaux used may not have been owned by the Road maintenance program, the Road maintenance program allowed for the use of equipment from other tribal agencies. In addition, Primeaux was paid hourly for a job that did not require a large amount of skill and was directed as to what job he was to perform. It was the type of work that would be performed under the direction of an employer as opposed to by a specialist without supervision. Although Primeaux was not a permanent employee of the Road maintenance program[4], there were

---

[4] Comment on Subsection (2)(j) of The RESTATEMENT (SECOND) OF AGENCY § 220 provides:

>  The time of employment and the method of payment are important. If the time of employment is short, the worker is less apt to subject himself to control as to details and the job is more likely to be considered his job than the job of the one employing him. This is especially true if payment is to be made by the job and not by the hour. If, however, the work is not skilled, or if the employer supplies the instrumentalities, the workman may be found to be a servant.

10

no permanent employees for this program which had a budget in fiscal year 2005 of only $16,971. In addition, 28 U.S.C. § 2671 defines "employee of the government" as including both temporary and permanent employees. IThe Court is denying the Government's motion for summary judgment and granting the Plaintiffs' motion for summary judgment on the issue of issue of whether Primeaux was an employee for purposes of the FTCA.

## WHETHER THE DISCRETIONARY FUNCTION EXCEPTION APPLIES?

In the United States' Reply Brief in Support of Motion for Summary Judgment (Doc. 30), the United States raised the discretionary function exception to the Federal Tort Claims Act. The Plaintiffs have now had the opportunity to respond to the discretionary function exception. Doc. 35. No liability for damages under the FTCA may lie for:

> [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).

Although the discretionary function exception may apply to the claims that the Yankton Sioux Tribe in operating under its self-determination contract failed to provide proper and adequate equipment and failed to properly inspect, maintain and repair this equipment, the facts surrounding this issue have not been adequately developed and presented for a determination on this issue at this time. Since the discretionary function exception operates as a jurisdictional bar this Court must operate under the principle that all doubts on jurisdictional points must be resolved in favor of plenary trial rather than dismissal at the pretrial stage. *See Lindberg ex rel. Conservator for Backlund v. United States*, 368 F.Supp.2d 1028, 1031 (D.S.D. 2005). The Court will defer ruling on this issue until the time of trial. Accordingly,

IT IS ORDERED:

1. That the Plaintiffs' motion for summary judgment is granted and the

11

United States' motion for summary judgment is denied with respect to whether maintenance or snow removal for the pedestrian pathway in issue was part of the self-determination contract in effect at the time of the 2006 accident;

2. That the Plaintiffs' motion for summary judgment is granted and the United States' motion for summary judgment is denied with respect to whether Primeaux was an employee of the government for purposes of the FTCA; and

3. The Court will defer ruling on the discretionary function exception issue until the time of trial.

Dated this 14th day of November, 2007.

BY THE COURT:

_____
Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY:_____
          DEPUTY