FILED

JUL 2 0 2009



CLERK

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| SUNBEAM NECKLACE, as Special Administrator of the Estate of Walter T. Thornton, Jr, | * * * * | Civ. 06-4274 |
| and | * * | MEMORANDUM OPINION AND VERDICT FOLLOWING COURT TRIAL |
| MARY AIKEN, as Special Administrator of the Estate of Justin Theodore Necklace, | * * * | |
| Plaintiffs, | * | |
| vs. | * * | |
| UNITED STATES OF AMERICA, acting through the Bureau of Indian Affairs, | * * * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## INTRODUCTION

Plaintiff Sunbeam Necklace, as Special Administrator of the Estate of Walter T. Thornton, Jr. (Walter), and Plaintiff Mary Aiken, as Special Administrator of the Estate of Justin Theodore Necklace (Justin), brought separate actions against the United States under the Federal Tort Claims Act (FTCA). Because the cases arose out of the same event or series of events and involve common questions of law and fact, the cases were consolidated. The event which provided the basis of these wrongful death claims occurred on January 23, 2006, on the Yankton Sioux Indian Reservation. On that date, Justin was driving and his grandfather, Walter, was riding as a passenger in a vehicle traveling southbound near Wagner, South Dakota. On that date, Isaac Primeaux, Jr., had been hired by the Administrative Officer for the Yankton Sioux Tribe to clear ice from the North Housing pedestrian pathway. Primeaux was northbound, driving a pickup and towing a flatbed trailer loaded with a skid loader. The trailer disengaged from the pickup and crossed the center line directly into the path of the southbound vehicle, resulting in a collision which killed both Justin and Walter.

This Court previously granted Plaintiffs' motion for summary judgment and denied the

United States' motion for summary judgment with respect to whether maintenance or snow removal for the pedestrian pathway in issue was part of the self-determination contract in effect at the time of the 2006 collision. This Court also previously granted Plaintiffs' motion for summary judgment and denied the United States' motion for summary judgment with respect to whether Primeaux was an employee of the government for purposes of the FTCA. *See Necklace v. United States*, 2007 WL 3389926 (D.S.D. Nov. 14, 2007)(not reported in F.Supp.2d). The United States has subsequently admitted liability before the court trial in this matter, which was held on October 21, 2008.

This Court previously issued its Order regarding the determination of beneficiaries. Since Sunbeam Necklace was never married to Walter and did not make a claim under the statute as a spouse, this Court determined that Walter's children are the only statutory beneficiaries with regard to the wrongful death action concerning Walter. This Court further determined that provided they present sufficient evidence of pecuniary loss, Justin's grandmother, Sunbeam, and Justin's siblings, as well as Justin's mother, Mary Aiken, may recover damages as beneficiaries in the wrongful death action concerning Justin. *See Necklace v. United States*, 2008 WL 4500000 (D.S.D. Oct. 7, 2008). The United States requested and this Court granted the United States' motion for a standing objection during the Court trial to any testimony elicited form any witness establishing, claiming, or presenting evidence of a pecuniary or economic loss on the part of any individual other than Mary Aiken for the death of Justin

Consideration of Deposition Transcripts of Mary Aiken and Roxanne Thornton

At the October 21, 2008, Court trial, neither Roxanne Thornton, daughter of Walter, nor Mary Aiken, daughter of Walter, Mother of Justin, and Special Administrator of the Estate of Justin, appeared at the trial to testify. Counsel for Plaintiffs requested and the United States resisted Plaintiffs' request that the Court consider the deposition transcripts of Mary Aiken and Roxanne Thornton. Federal Rule of Civil Procedure Rule 32(a)(4)(B) provides: "A party may use for any purpose the deposition of a witness, whether or not a party, if the court finds . . . that the witness is more than 100 miles from the place of hearing or trial or is outside the United States, unless it appears that the witness's absence was procured by the party offering the deposition." Both Mary Aiken and Roxanne Thornton have submitted affidavits which disclose that they were more than 100 miles from Sioux Falls, South Dakota, and that financial and transportation issues factored into their

absence from the court trial. Doc. 112, 113. Although the Court believes that these statutory beneficiaries could have been present if they had been more diligent in their planning, since the United States had the opportunity to question them at their depositions, *See* FED. R. EVID. 804(b)(1), the Court has determined it will consider the deposition transcripts of Mary Aiken and Roxanne Thornton that are on file.

Ruling on Exhibit 14

The Court reserved ruling on Plaintiffs' Exhibit 14, an April 9, 2008, opinion letter from Dr. Epslund regarding Walter's life expectancy. After reviewing Dr. Epslund's May 27, 2008, deposition testimony which references but does not include as an Exhibit the April 9, 2008, opinion letter, the Court has determined to admit Exhibit 14 and give it the weight the Court considers appropriate.

After having considered the testimony, exhibits and applicable law the Court enters the following findings of fact, conclusions of law and Verdict.

## FINDINGS OF FACT

1. Walter, an enrolled member of the Yankton Sioux Tribe of Indians, was born on December 9, 1942. Walter and Sunbeam were never legally married but had five children in the years listed: Mary Necklace Aiken (1965); Duane Necklace (1969); Roxanne Thornton Aiken (1972); Cheryl Necklace (1977); Teresa Necklace Bettelyoun (1977-2002); and Tina Necklace Greger (1979). Duane was adopted out and had not been heard from by Sunbeam and Walter and Teresa is deceased. Teresa's daughter, Kyra, was adopted by Sunbeam but not by Walter.

2. Walter was a truck driver for 25 years until he quit this work in 1984 after a trucking strike. In 1984 Walter and Sunbeam moved their family to the Yankton Sioux Reservation. Because of the lack of employment opportunities on the Reservation, Walter did odd jobs until he became employed in 1993 at the Ft. Randall Casino where he worked as a line cook for 5 years. In 1998 Walter had to quit his job as a line cook because his heal spurs prevented him from standing on a cement floor and performing his job. Walter subsequently worked for a time at Green Thumb for four hours a day until health issues prevented him from being employed. Walter was receiving $582 per month in disability payments at the time of his death.

3. Walter suffered from a number of health problems. Diabetes was Walter's primary medical condition and he required insulin twice a day from the time Dr. Gretchen Epslund began treating him

in October of 2000 until the time of his death in January of 2006.

4. Walter also suffered from stage 4 to 6 instage renal disease which required dialysis since 2003, hypertension, hyperlipidemia, coronary artery disease, and osteomyelitis of one foot. Walter had undergone 4-vessel bypass surgery, the implantation of a pacemaker and the amputations of toes. Dr. Kham Vay Ung, who treated Walter, provided testimony regarding the benefits in terms of quality and length of life of toe amputation as opposed to amputation of the foot or leg. Walter had also been diagnosed with mitral and tricuspid regurgitation which was being managed by medication.

5. Walter was not an acceptable kidney transplant candidate because his health issues may have precluded him from surviving the transplant surgery.

6. Walter had given up smoking years before his death and did not abuse alcohol. Walter had his "last beer" in 2003. Walter's physicians viewed him as compliant.

7. At the time of Walter's death, five of Walter and Sunbeam's grandchildren were living with Walter and Sunbeam. These grandchildren included Justin Necklace (1981-2006), son of Mary Necklace Aiken; Krishella Necklace (1993), Trina Necklace (1994) and Walter Necklace (1999), children of Cheryl Necklace; and Kyra (1996), daughter of Teresa Necklace Bettelyoun, deceased. Walter did not have legal custody of any of the grandchildren.

8. Justin, an enrolled member of the Yankton Sioux Tribe of Indians, was born on August 29, 1981. Justin's mother, Mary, was a teenager when he was born and Mary left Justin for Sunbeam and Walter to raise when Mary went to the Job Corps and when she moved to North Dakota and married and had children. Although Justin went to live with his mother in North Dakota for a few months when he was about 7 and when he was in the 9th or 10th grade, and visited her in North Dakota for a few months when he was 18 years of age, Mary was minimally involved in raising Justin. There is no evidence that Justin was in poor health.

9. At the time of Walter and Justin's death, Sunbeam was the only person in the household employed outside the household. Sunbeam worked at the Ft. Randall Casino from 6:00 p.m. until 2:00 or 3:00 a.m., and got home around 4:00 a.m.

10. The school-age grandchildren awoke at 7:00 a.m. and had to be at school at 8:00 a.m. These grandchildren were served breakfast at school, but sometimes ate breakfast at home. During the school year Walter and Justin assisted the grandchildren with homework, in getting ready for bed,

and in getting up for school. Walter and Justin prepared breakfast for them when they ate breakfast at home.

11. Walter went in to the Indian Health Service Hospital for dialysis at 5:00 a.m. until 10:00 or 10:30 a.m. on Monday, Wednesday and Friday. On those days Justin alone assisted the grandchildren with getting up and off to school.

12. The school- aged children came home from school at 3:50 p.m. Although Sunbeam sometimes cooked the evening meal for them, Walter and Justin also cooked the evening meal.

13. In the summertime when the grandchildren were not in school Walter and Justin cared for the grandchildren and took the grandchildren to the lake for swimming and boating. Justin played football, basketball, cards and board games with the grandchildren.

14. Justin helped with household chores including cleaning and laundry, mowed lawn, did yard work, painted, moved heavy objects and fixed and covered windows. Justin and Walter worked on and maintained the family vehicle together. The 1986 GMC pickup cost about $500 at the time it was purchased by Walter.[1] Walter was skilled in working on vehicles.

15. Justin was raised and regarded as a son by Sunbeam and regarded as an uncle by Sunbeam's grandchildren.

16. Sunbeam was 62 years of age at the time of trial and has diabetes. She has a healthy lifestyle which includes no smoking, no drinking, and watching her weight and her diet. She is controlling her diabetes through lifestyle and appeared healthy at the time she testified at this trial.

17 Sunbeam needed Justin and Walter to feel safe in her home, and has needed to take additional safety measures since their death.

18. At the time of his death, Justin had no girlfriend and no outside of home employment. Justin was content living in Walter and Sunbeam's home.

19. Sunbeam anticipated Justin caring for her in her elder years and had a reasonable basis for that anticipation.

20. Walter's daughter, Tina Greger, has lived in Wagner with her husband and children. With her son, Quinn (2003), Tina visited her father on a daily basis up until the time of his death.

---

[1]The Executor of Walter's estate had made a claim to the Bureau of Indian Affairs in the amount of $6,000 for property damage to the totaled 1986 GMC pickup.

21. Walter was affectionate with Tina and Quinn and the relationship Walter had with Tina and Quinn was important to and valued by Tina.

22. Walter provided advice and support to Tina regarding automobiles and relationships.

23. Walter's daughter, Cheryl Necklace, has lived in Wagner. Walter and Sunbeam were raising her three children at the time of Walter's death. Cheryl was 15 years of age when she had her first child and 16 years of age when she had her second child. Cheryl has struggled with alcohol addiction, was in jail for a 3rd D.W.I. at the time of the Court trial, and has relied on her parents to raise her children.

24. Cheryl trusted having her children with her father and relied upon Walter to provide a father figure for her children. Walter was not judgmental towards Cheryl and provided her guidance, emotional support and advice about life and family.

25. Cheryl's daughters Krishella and Trina are now going to boarding school at the Flandreau Indian School. They wanted to go to the school and are doing well at the boarding school.

26. Sunbeam's adopted daughter, Kyra, was approximately 10 years of age at the time of Justin and Walter's death. Justin had assisted in caring for Kyra, and the Court finds that since both Walter and Kyra's mother are deceased, Justin, if he had lived, would have continued to assist Sunbeam in caring for Kyra until Kyra's early teens.

27. Walter, Sunbeam, Cheryl, Tina, Justin and the grandchildren gathered at Walter and Sunbeam's home every Sunday for a Sunday meal and socialization. These gatherings were enjoyed by and important to the family.Justin and Walter were loved by and loved their family.

28. The last time Mary Aiken had seen Walter before he died was in 2000, but she communicated with him by telephone.

29. Mary Aiken testified in her deposition that she never asked her father for advice or assistance.

30. The last time Mary Aiken saw Justin was in 2000, but she communicated with him by telephone.

31. Although there are references to Justin having communication with his half siblings, it is not clear which half siblings he spoke with and how often they communicated. None of the half siblings presented testimony at trial or provided deposition testimony to the Court.

32. Roxanne Thornton had not been back to Wagner to see her parents since she left Wagner in 2003, but she communicated with her father by telephone.

33. Roxanne Thornton testified that she had sought relationship advice from her father and that she visited him in the hospital when he had bypass surgery and when he had West Nile disease.

34. Walter and Justin shared Wake Services and Funeral Services. The funeral services cost $1,000 and the Give Away ceremony for Walter and Justin which was held a year after their deaths cost $3,000.

35. Dr. Gretchen Epslund, Walter's treating physician opined in an April 9, 2008, letter opinion that but for the auto accident Walter had a life expectancy of greater than 3 years. The Court finds that based upon the medical evidence, at the time of the accident Walter had a life expectancy of 3 years.

36. The Court finds that based upon the National Vital Statistics Report submitted by the United States in Defendant's Exhibit 107, Sunbeam had a life expectancy of 23 years.

## CONCLUSIONS OF LAW

1. This Court incorporates by reference conclusions of law previously made in its summary judgment memorandum opinion, *Necklace v. United States*, 2007 WL 3389926 (D.S.D. Nov. 14, 2007)(not reported in F.Supp.2d), and conclusions of law made in its memorandum opinion regarding the determination of heirs, *Necklace v. United States*, 2008 WL 4500000 (D.S.D. Oct. 7, 2008).

2. This Court further incorporates by reference in these conclusions of law any finding of fact more properly considered a conclusion of law.

3. Liability of the defendant in this case is established by the facts of the case as well as by the admission of the defendant.

4. Wrongful death damages are awarded proportionate to the pecuniary injury resulting from such death to the persons respectively for whose benefit the action has been brought. S.D.C.L. § 21-5-7.

5. Pecuniary injury encompasses more than strictly economic losses. Pecuniary loss is defined broadly to encompasses the loss to a beneficiary of such things as protection, guidance, advice, companionship and assistance that the beneficiaries might reasonably be expected to have derived from their decedent had his life not been terminated. It includes these losses "'but without consideration for the grief and mental anguish suffered by the beneficiaries because of the wrongful death.'" *Zoss v. Dakota Truck Underwriters*, 590 N.W.2d 911, 913-14 (S.D.1999)(quoting *Sander v. Geib, Elston, Frost Prof'l Ass'n*, 506 N.W.2d 107, 119 (S.D. 1993)).

6. A determination of pecuniary injury arising from the death of an adult and adult child requires consideration of the factors set forth in South Dakota Civil Pattern Jury Instruction 31-01 and 31-02-1, which includes consideration of a decedent's life expectancy at the time of his death, the decedent's health, age, habits, talents and success, and the life expectancy, health and physical condition of the beneficiaries, and all reasonable expenses incurred for a funeral and for burial or other disposition of a decedent's body.

5. "In any case, it is difficult to measure the monetary value of the loss of companionship and society." *Flagtwet v. Smith*, 393 N.W.2d 452, 455 (S.D. 1986). In spite of this difficulty, this Court is required to adequately compensate for these losses. *Id.* at 456.

6. All of Walter's daughters have established damages for the loss of his guidance, advice, companionship and assistance. However, the nature of the relationship between Walter and each daughter was unique. In addition, although the Court has considered the deposition testimony of Mary and Roxanne, the inability to observe the demeanor of these beneficiaries has impacted the ability of this Court to evaluate such damages and has impacted the amount of damages this Court will award to Mary and Roxanne.

7. When a parent does not raise a child the right to sue for loss of society passes to the care-givers who have served in the capacity usually held by blood parents. *See Estate of Shubert v. Stasch*, 1992 WL 51704 at *2 (N.D. Ill. Mar. 9, 1992)(not reported in F.Supp.). The relationship of Sunbeam and Justin was the same special relationship shared by parent and child.

8. Sunbeam has established damages for the loss of Justin's companionship, assistance and protection.

9. In the trial of this matter, no potential beneficiary of Justin other than Sunbeam has established damages for Justin's death.

10. The Estate of Walter has established damages for funeral and related expenses which include the giveaway expenses.

11. The Estate of Walter has established damages for the loss of the 1986 GMC pickup.

## VERDICTS

1. The sum of $1,000 is awarded to Mary Aiken for the wrongful death of Walter.

2. The sum of $1,000 is awarded to Roxanne Thornton for the wrongful death of Walter.

3. The sum of $15,000 is awarded to Cheryl Necklace for the wrongful death of Walter.

4. The sum of $27,000 is awarded to Tina Greger for the wrongful death of Walter.

5. The sum of $100, 000 is awarded to Sunbeam Necklace for the wrongful death of Justin.

6. The sum of $4,000 is awarded to the Estate of Walter for funeral and giveaway expenses, the giveaway being a part of the Native American funeral process.

7. The sum of $500 is awarded to the Estate of Walter for the loss of the 1986 GMC pickup.

Dated this 20 day of July, 2009.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY:_____
DEPUTY